FILED
U.S. DISTRICT COURT

2013 JUN 11  ⊃ 4: 10

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

Brian C. Johnson, #3936
H. Burt Ringwood, #5787
R. Roman Groesbeck, #12530
STRONG & HANNI
9350 South 150 East, Suite 820
Sandy, Utah 84070
Telephone: (801) 532-7080
Facsimile: (801) 596-1508
*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT,

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WESTROC HOLDCO, INC., a Utah corporation,<br><br>    Plaintiff,<br><br>v.<br><br>HOLCIM (US) INC., a Delaware corporation, ASH GROVE CEMENT COMPANY, a Delaware corporation, and JOHN DOES I-V,<br><br>    Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>---<br><br>Case: 2:13cv00432<br>Assigned To : Pead, Dustin B.<br>Assign. Date : 6/11/2013<br>Description: Westroc Holdco v. Holcim et al |

Plaintiff Westroc Holdco, Inc. ("WHI"), hereby complains of Defendants Holcim (US) Inc., Ash Grove Cement Company ("Ash Grove"), and Does I-V (collectively the "Defendants") as follows:

**SUMMARY OF THE CASE**

1.      The above captioned action (the "Action") is brought by WHI as the successor in interest to the claims of Westroc, Inc.[1]

2.      At all times relevant to this Action, WHI was a purchaser of Portland cement ("Cement") and a producer and seller of ready mix concrete ("Concrete"), of which Cement is a primary ingredient.

3.      WHI purchased Cement from the Defendants at all times relevant to this Action.

4.      Defendants are and at all times relevant to this Action, regional producers and suppliers of Cement.

5.      WHI brings this Action against Defendants for money damages, including treble damages, as a result of Defendants' violations of Section 1 of the Sherman Act, Section 2 of the Robinson-Patman Act, 15 U.S.C. §§ 1 and 13, respectively, and the Utah Antitrust Act and Utah Unfair Practices Act, Utah Code Ann. §§ 76-10-3101 *et seq.* and 13-5-1 *et seq.*, respectively.

6.      As more fully described below, the Defendants contracted, combined, and conspired to use their collective market power to fix the prices of Cement for WHI and dozens of other similarly situated mid-level purchasers of Cement and producers of Concrete within the Utah geographic area (the "Utah Market") of like size and operation (together, the "Mid-Tier

---

[1] WHI is the successor in interest to any and all claims owned by or accrued to an entity formerly known as Westroc, Inc., a Utah corporation, which arise out of the violations of Defendants identified in this Action. WHI succeeded to those claims by virtue of a purchase agreement dated April 1, 2013. During all relevant times at issue, Westroc, Inc. was a purchaser of Cement from Defendants and a producer and seller of Concrete and other related products in the Utah Market, as defined in this Complaint. However, by virtue of WHI's ownership of the claims identified in the forgoing sentence, for the purpose of the duration of this Complaint, WHI is treated and referenced in this Complaint as though it stands in the shoes of Westroc, Inc.

Purchasers") at supracompetitive and economically unfeasible levels, thereby unreasonably restraining competition.

7.     Also as more fully described below, Defendants further charged such supracompetitive prices to the Mid-Tier Purchasers, while, at the same time, and for the exact same Concrete, charged a handful of top-level purchasers of Cement and producers of Concrete in the Utah Market, which grouping of purchasers comprise the largest (in terms of revenue, employees, assets, and similar qualifiers.) Concrete suppliers in the Utah Market (the "Top-Tier Purchasers"), prices significantly below the levels those being charged to the Mid-Tier Purchasers.

8.     WHI was as a direct consequence of Defendants' conduct unable to effectively compete within the Utah Market against the Top-Tier Purchasers with respect to the production and sale of Concrete to consumers situated within that market, and has suffered substantial injury to its business as a result.

## JURISDICTION AND VENUE

9.     WHI brings this action pursuant to Sections 4(a) and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26, respectively) to recover damages and costs of suit, including reasonable attorneys' fees, as the result of Defendants' violations of Section 1 of the Sherman Act and Section 2 of the Robinson-Patman Act.

10.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1337 as this action involves a federal question arising under Sections 4 and 16 of the Clayton

Act, 15 U.S.C. §§ 15 and 26, respectively, and pendent and/or ancillary Utah state law claims arising out of a common nucleus of operative fact.

11.     Personal jurisdiction over all Defendants comports with the United States Constitution.

12.     Venue is proper in this Court pursuant to Sections 4(a) and 12 of the Clayton Act (15 U.S.C. §§ 15(a) and 22, respectively) and 28 U.S.C. § 1391 because at all relevant times Defendants resided, transacted business, were found or had agents in Utah, and because a substantial part of the events giving rise to WHI's claims occurred, and a substantial portion of the affected interstate trade and commerce described below was carried out, in Utah.

## PARTIES

13.     WHI is a registered Utah corporation, in good standing, with a principal place of business at 7214 N. Mobley Rd., Odessa, FL 33556.

14.     WHI is the successor in interest to any and all claims of Westroc, Inc. arising out of violations alleged against Defendants pursuant to a purchase agreement dated April 1, 2013.

15.     At all times relevant to this action, WHI individually or through its predecessor, Westroc, Inc., was a purchaser of Cement from Defendants and a producer and seller of Concrete and other related products in the Utah Market.

16.     Defendant Holcim is a registered Delaware corporation with its principal place of business at 201 Jonas Road, Waltham, Massachusetts 02451.

17.     Holcim is a subsidiary of Holcim Ltd., a Swiss company.

18.     Holcim is a producer and supplier of Cement in the Utah Market and Cement, asphalt, concrete and aggregates throughout Eastern, Southern and Midwest United States.

19.     Holcim produces and/or sells Cement and such other materials from one or more locations within the State of Utah, including at 6055 East Croydon Road, Morgan, UT 84050; 850 South 850 East, Lehi, Utah 84043; 3005 SR 56, Cedar City, Utah 84721.

20.     Holcim also produces Cement and such other materials from a location in the State of Colorado located at 3500 State Highway 120, Florence, Colorado 81226 (the "Colorado Plant").

21.     Upon information and belief, Holcim, from time to time, but at all relevant times to this Action, manufactured certain Cement at the Colorado Plant, transported said Cement to its location at 850 South 850 East, Lehi, Utah 84043, and sold such Cement from that location in the Utah Market.

22.     Defendant Ash Grove is registered Delaware corporation with its principal place of business at 11011 Cody Overland Park, Kansas 66210.

23.     Ash Grove, through itself and/or its subsidiaries, is a producer and supplier of Cement and packaged materials in the Utah Market and throughout the Pacific West, Midwest and Southern United States.

24.     Ash Grove produces and/or sells Cement and such other materials from one or more locations within the State of Utah, including at 4885 South 900 East, #201, Salt Lake City, UT 84117; 5216 South 100 West, Murray, UT 84107; and Highway 132, Leamington, UT 84638.

## CO-CONSPIRATORS

25.     Various other persons, firms or entities not yet named as Defendants in this action have participated as co-conspirators with Defendants in the offenses alleged in this Complaint and have performed acts and made statements in furtherance of the Defendants' conspiracy to manipulate process of Cement in an anti-competitive fashion.  Evidence of the identity of co-conspirators is in the possession of Defendants.   When knowledge of such co-conspirators becomes known to WHI, it will amend this Complaint to add such individuals and entities or Defendants as parties to this Action.

## INTERSTATE TRADE AND COMMERCE

26.     At all relevant times to this Action, the activities of Defendants occurred within interstate commerce, had (and continue to have) a substantial effect on interstate commerce, and have unreasonably restrained (and continue to restrain) interstate trade and commerce.

27.     At all relevant times to this action, two or more sales of Cement by Defendants to each of the Mid-Tier Purchasers and the Top-Tier Purchasers were made for the use, consumption, or resale within the Utah Market and surrounding geographic areas.

## RELEVANT PRODUCT MARKETS

28.     There is one relevant product market in this instant action: Cement. The relevant geographic market is the Utah Market.

**MARKET POWER**

29.     Upon information and belief, the Defendants possess upwards of ninety percent (90%) of the market share of total Cement sold to the Mid-Tier Purchasers and Top-Tier Purchasers in the Utah Market.

30.     Defendants consequently hold considerable market power and have been and are capable of dictating the price for Cement in the Utah Market, specifically as it relates to Cement to the Mid-Tier Purchasers and Top-Tier Purchasers of Cement.

**GENERAL ALLEGATIONS**

31.     Cement is the primary binding ingredient in a number of construction materials, including Concrete.

32.     Cement is a fine powder created by grinding clinker, the product of heating raw materials including limestone, in a kiln or other oven-type apparatus.

33.     Cement is typically sold in bulk by the ton (priced in dollars per ton) or in 94 lb. bags (priced in dollars per bag). Due to the Cement's high weight and low cost relative to volumes shipped, freight is a significant factor in the price at which Cement is sold.

34.     Cement is a commodity, produced and sold and traded throughout the United States and worldwide, including, among others, through major commodity indices and commodity brokers.

35.     Concrete is a mixture of Cement, its primary ingredient (by cost), and other materials including sand, gravel, and water.

36.     Concrete is most commonly produced at batch plants, where proportions of input materials are measured, combined with water in a rotating drum mounted on a truck, and then mixed in the truck's drum on the way to the destination at which the Concrete is to be used— primarily at a construction site.

37.     Because the addition of water begins an irreversible chemical reaction, and because the Concrete is poured directly at the construction or other site, truck arrival must be timed so that the Concrete hardens at the appropriate time.

38.     Concrete is used primarily in commercial, governmental, and residential construction.

39.     The primary end users of Concrete in Utah are construction companies, of which there are hundreds, if not thousands, of varying types and sizes.

40.     Aside from small-scale, private construction projects, the Concrete sold to the construction companies described in the immediately preceding paragraph of this Complaint and utilized in the vast majority of any substantial commercial, governmental, and residential construction in the Utah Market (e.g., roadways, commercial buildings, commercial and residential parking structures, highway and freeway retaining walls, airport runways, sewage utilities, curbing, building foundations, and the like) ("Construction Projects") is largely supplied by the Mid-Tier Purchasers or the Top-Tier Purchasers.

41.     At all relevant times to this Action, the Cement needs in the Utah Market necessary to supply Concrete for Construction Projects are fulfilled primarily by Defendants, individually or collectively.

42.     At all relevant times to this action, WHI purchased approximately 40,000 tons per year of Cement from Defendants for use in Construction Projects.

43.     The specific per tonnage Cement volume purchased by WHI from Defendants has varied during relevant times to this Action; generally WHI's purchases of Cement were comprised of roughly seventy-eight percent (78%) from Defendant Holcim, and twenty-two percent (22%) from Defendant Ash Grove.

44.     At all relevant times to this Action, Defendant Holcim supplied and sold to the Mid-Tier Purchasers and the Top-Tier Purchasers Cement of like grade and quality, which sales often occurred within hours, if not simultaneously, of one another, and in which the post-rebate per ton price for the Cement sold was $15.00 per ton more for the Mid-Tier Purchasers than for the Top-Tier Purchasers.

45.     At all relevant times to this Action, Defendant Ash Grove supplied and sold to the Mid-Tier Purchasers and the Top-Tier Purchasers Cement of like grade and quality, which sales often occurred within hours, if not simultaneously, of one another, and in which the post-rebate per ton price for the Cement sold was approximately $24.00 per ton more for the Mid-Tier Purchasers than for the Top-Tier Purchasers.

46.     At all relevant times to this action, the Cement supplied and sold to the Mid-Tier Purchasers and for the Top-Tier Purchasers by Defendants was for use, consumption, or resale within the Utah Market and surrounding geographic areas.

47.     The Cement sold by the Defendants to the Mid-Tier Purchasers was of like grade and quality to the Cement sold to the Top-Tier Purchasers.

**INSTANCES OF DEFENDANTS' ILLEGAL AND COLLUSIVE CONDUCT**

48.     Beginning in at least January 1, 2008, if not earlier, and continuing on through the date of the instant Action (the exact dates being unknown at this time), upon information and belief, Defendants, in connection with their supplying Cement to the Mid-Tier Purchasers and the Top-Tier Purchasers, contracted, combined, and/or conspired to use their collective market power to fix the prices of Cement for WHI and the other Mid-Tier Purchasers at supracompetitive and economically unfeasible levels, charging WHI and the other Mid-Tier Purchasers an after rebate price of between $15.00 per ton and approximately $24.00 per ton more than the Top-Tier Purchasers for purchases of the same Cement made by such purchasers at contemporaneous times.

49.     For the purpose of forming and effectuating this contract, combination or conspiracy, Defendants, upon information and belief, did those things that they combined and conspired to do, including among others, the following:

    a.  participated in meetings and conversations to discuss the charging of disparate Concrete pricing to the Mid-Tier Purchasers and the Top-Tier Purchasers for purchases of the same Cement made at the same times in the Utah Market;

    b.  agreed to charge prices at certain levels and/or to otherwise raise, fix, maintain, or stabilize the prices of Concrete within the Utah Market, based on the type or status of the purchaser of such Concrete;

c.      sold Cement in the Utah Market at agreed upon prices and/or in accordance with agreed upon plans; and

d.      agreed to conceal and keep secret their illegal agreements.

50.      Upon information and belief, Defendants initial discussions and agreements to conspire regarding such price fixing and discrimination amongst and between the Mid-Tier Purchasers and the Top-Tier Purchasers has led naturally to a pattern, for years, if not longer, of close collaboration among such competitors with respect to all facets of the Defendants' respective production and supply of Cement within the Utah Market.

51.      Defendants illegal and collusive acts have been caused by a horizontal collaboration among competing producers and suppliers of Cement in the Utah Market, including Defendants Holcim and Ash Grove, who have used their collective market power to gain agreements or understandings with one another relating to the price fixing and discrimination perpetrated amongst and between the Mid-Tier Purchasers and the Top-Tier Purchasers.

52.      Moreover, Defendants, through charging disparate prices for the sale of Cement of like grade and quality, at the same times, to WHI, and other Mid-Tier Purchasers, on the one hand, and one or more of the Top-Tire Purchasers, on the other hand, have engaged in discriminatory pricing which is impermissible and unnecessarily restricts competition.

53.      Defendants and their co-conspirators have engaged in the activities described in the forgoing paragraphs in furtherance of their antitrust violation and for the purpose of

11

effectuating the unlawful contract, combination and/or conspiracy, and the illegal price discrimination described herein.

### EFFECTS OF DEFENDANTS' ILLEGAL AND COLLUSIVE CONDUCT

54.   Defendants' contract, combination and/or conspiracy, and their price discrimination, has had the following effects, among others:

    a.   Defendants and their co-conspirators sold Cement in the Utah Market at artificial, disparate, and non-competitive price levels;

    b.   WHI and other direct purchasers of Cement from Defendants were deprived of the benefit of free and open competition in the Utah Market for Cement;

    c.   price competition in the sale of Cement among sellers, purchasers, and consumers in the Utah Market was restrained, suppressed and/or eliminated;

    d.   costs of entry into the Utah Market relative to the supply of Cement, and, thus, Concrete, to Construction Projects has been significantly increased, which has impeded competition related thereto and erected artificial barriers to entry into the sale of Concrete in the Utah Market; and

    e.   information that would enable primary end users of Concrete in Utah to make informed price and product comparisons between competing products has been suppressed or restrained.

55.     As a proximate result of Defendants' antitrust violations, WHI was injured and financially damaged in its business and property, in that, among other things, it paid exorbitantly more for Cement than it would have paid in the absence of Defendants' unlawful conduct, and in that it was forced to compensate for such inflated prices of Cement in connection with its bidding on and completing Construction Projects on which it supplied Cement vis-a-vis Concrete, among other things.

### FIRST CAUSE OF ACTION
**Violations of the Sherman Act**

56.     WHI realleges and incorporates here by reference the allegations set forth in the preceding paragraphs 1 through 55 of this Compliant.

57.     Collectively, the Defendants hold a dominant position and possess monopoly power in the Utah Market for Cement and surrounding areas which, by virtue of their entering into agreements or understandings with one another to effect the same, are sufficient to charge prices at certain levels and/or to otherwise raise, fix, maintain, or stabilize the prices of Cement and Concrete within the Utah Market, and actually restrict competition.

58.     Defendants, in connection with their supplying Cement to the Mid-Tier Purchasers and the Top-Tier Purchasers, have contracted, combined, and/or conspired to use their collective market power to fix the prices of Cement for WHI and the other Mid-Tier Purchasers at supracompetitive and economically unfeasible levels, charging WHI and the other Mid-Tier Purchasers an after rebate price of between $15.00 per ton and approximately $24.00

per ton more than the Top-Tier Purchasers for purchases of Cement of like grade and quality made by such purchasers at contemporaneous times.

59.    The purpose and effect of the Defendant contracts, combinations and/or conspiracies has been to illegally restrict competition in the sale of Cement in the Utah Market to WTI and other Mid-Tier Purchasers, among others.

60.    By engaging in the illegal and collusive activities described herein, Defendants have unreasonably restrained competition in the following ways, among others:

   a.    Defendants and their co-conspirators sold Cement in the Utah Market at artificial, disparate, and non-competitive price levels;

   b.    WHI and other direct purchasers of Cement from Defendants were deprived of the benefit of free and open competition in the Utah Market for Cement;

   c.    price competition in the sale of Cement in the Utah Market was restrained, suppressed and/or eliminated;

   d.    costs of entry into the Utah Market relative to the supply of Cement, and, thus, Concrete, to Construction Projects has been significantly increased, which has impeded competition related thereto; and

   e.    information that would enable primary end users of Concrete in Utah to make informed price and product comparisons between competing products has been suppressed or restrained.

61.     By engaging in the illegal and collusive activities described in this Complaint, Defendants have burdened, and continue to burden, competition among the Mid-Tier Purchasers and the Top-Tier Purchasers in the Utah Market without advancing any laudable or legitimate public interest.

62.     By engaging in the illegal and collusive activities described in this Complaint, Defendants have placed, and continue to place, a burden on interstate commerce, as evidenced among suppliers, distributors, and purchases of Cement throughout the Utah Market and surrounding geographic areas.

63.     By engaging in the illegal and collusive activities described in this Complaint, Defendants are engaged in a wrongful horizontal price fixing, a per se violation under Section 1 of the Sherman Act, 15 U.S.C. § 1.

64.     As a direct result of Defendants' violations of the Sherman Act, WHI has suffered substantial loss and damage to its trade and business, in an amount to be proven at trial, and is entitled to recover treble damages and costs of suit, including reasonable attorneys' fees pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a).

## SECOND CAUSE OF ACTION
### Violations of the Robinson-Patman Act

65.     WHI realleges and incorporates here by reference the allegations set forth in the preceding paragraphs 1 through 64 of this Complaint.

66.     Defendants are engaged in the business of producing and supplying, among other things, Cement, to Mid-Tier Purchasers and Top-Tier Purchasers in the Utah Market.

67.     WHI and one or more of the Mid-Tier Purchasers are competitors of the Top-Tier Purchasers.

68.     Cement is a commodity.

69.     At all relevant times to this Action, Defendant Holcim supplied and sold to both the Mid-Tier Purchasers and the Top-Tier Purchasers Cement of like grade and quality, which sales often occurred within hours, if not simultaneously, of one another, and in which the post-rebate per ton price for the Cement sold was $15.00 per ton more for the Mid-Tier Purchasers than for the Top-Tier Purchasers.

70.     At all relevant times to this action, Defendant Ash Grove supplied and sold to both the Mid-Tier Purchasers and the Top-Tier Purchasers Cement of like grade and quality, which sales often occurred within hours, if not simultaneously, of one another, and in which the post-rebate per ton price for the Cement sold was approximately $24.00 per ton more for the Mid-Tier Purchasers than for the Top-Tier Purchasers.

71.     At all relevant times to this action, the Cement supplied and sold to the Mid-Tier Purchasers and to the Top-Tier Purchasers by Defendants was for use, consumption, or resale within the Utah Market and surrounding geographic areas.

72.     WHI has been effectively precluded from competing in the supply of Concrete to Construction Projects in the Utah Market on account of the Defendants' discriminatory pricing practices, including their refusal to offer WHI pricing for Cement of like grade and quality comparable to those enjoyed by the Top-Tier Purchasers and instead offering only terms and pricing that are financially onerous and unsupportable by the Utah Market.

73.     By engaging in the illegal and collusive discriminatory pricing practices described herein, Defendants are engaged in violations of Section 2 of the Robinson-Patman Act, 15 U.S.C. § 13.

74.     As a direct result of Defendants' violations of the Robinson-Patman Act, WHI has suffered substantial loss and damage to its trade and business, in an amount to be proven at trial, and is entitled to recover treble damages and costs of suit, including reasonable attorneys' fees pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a).

### THIRD CAUSE OF ACTION
### Violations of the Utah Antitrust Act

75.     WHI realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs 1 through 74 of this Complaint.

76.     Collectively, the Defendants collectively hold a dominant position in the Utah Market and surrounding areas which, by virtue of their entering into agreements or understandings with one another to effect the same, are sufficient to charge prices at certain levels and/or to otherwise raise, fix, maintain, or stabilize the prices of Cement and Concrete within the Utah Market, and actually restrict competition.

77.     Defendants, in connection with their supplying Cement to the Mid-Tier Purchasers and the Top-Tier Purchasers, have contracted, combined, and/or conspired to use their collective market power to fix the prices of Cement for WHI and the other Mid-Tier Purchasers at supracompetitive and economically unfeasible levels, charging WHI and the other Mid-Tier Purchasers an after rebate price of between $15.00 per ton and approximately $24.00

per ton more than the Top-Tier Purchasers for purchases of Cement of like grade and quality made by such purchasers at contemporaneous times.

78.     The purpose and effect of the Defendant contracts, combinations and/or conspiracies has been to illegally restrict competition in the sale of Cement in the Utah Market to WTI and other Mid-Tier Purchasers, among others.

79.     By engaging in the illegal and collusive activities described herein, Defendants have unreasonably restrained competition in the following ways, among others:

a.      Defendants and their co-conspirators sold Cement in the Utah Market at artificial, disparate, and non-competitive price levels;

b.      WHI and other direct purchasers of Cement from Defendants were deprived of the benefit of free and open competition in the Utah Market for Cement;

c.      price competition in the sale of Cement in the Utah Market was restrained, suppressed and/or eliminated;

d.      costs of entry into the Utah Market relative to the supply of Cement, and, thus, Concrete, to Construction Projects has been significantly increased, which has impeded competition related thereto; and

e.      information that would enable primary end users of Concrete in Utah to make informed price and product comparisons between competing products has been suppressed or restrained.

80.     By engaging in the illegal and collusive activities described herein, Defendants have burdened, and continue to burden, competition among the Mid-Tier Purchasers and the Top-Tier Purchasers in the Utah Market without advancing any laudable or legitimate public interest.

81.     By engaging in the illegal and collusive activities described herein, Defendants have placed, and continue to place, a burden on interstate commerce, as evidenced among suppliers, distributors, and purchases of Cement throughout the Utah Market and surrounding geographic areas.

82.     By engaging in the illegal and collusive activities described herein, Defendants are engaged in violations the Utah Antitrust Act, Utah Code Ann. § 76-10-3014.

83.     As a direct result of Defendants' violations of the Utah Antitrust Act, WHI has suffered substantial loss and damage to its trade and business, in an amount to be proven at trial, and is entitled to recover treble damages and costs of suit, including reasonable attorneys' fees pursuant to Utah Code Ann. § 76-10-3109.

### FOURTH CAUSE OF ACTION
**Violations of the Utah Unfair Practices Act**

84.     WHI realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs 1 through 83 of this Complaint.

85.     The Defendants are engaged in the business of producing and supplying, among other things, Cement, to Mid-Tier Purchasers and Top-Tier Purchasers in the Utah Market.

86.   The WHI and one or more of the Mid-Tier Purchasers are competitors of the Top-Tier Purchasers.

87.   Cement is a commodity.

88.   At all relevant times to this action, Defendant Holcim supplied and sold to both the Mid-Tier Purchasers and the Top-Tier Purchasers Cement of like grade and quality, which sales often occurred within hours, if not simultaneously, of one another, and in which the post-rebate per ton price for the Cement sold was $15.00 per ton more for the Mid-Tier Purchasers than for the Top-Tier Purchasers.

89.   At all relevant times to this action, Defendant Ash Grove supplied and sold to both the Mid-Tier Purchasers and the Top-Tier Purchasers Cement of like grade and quality, which sales often occurred within hours, if not simultaneously, of one another, and in which the post-rebate per ton price for the Cement sold was approximately $24.00 per ton more for the Mid-Tier Purchasers than for the Top-Tier Purchasers.

90.   At all relevant times to this action, the Cement supplied and sold to the Mid-Tier Purchasers and to the Top-Tier Purchasers by Defendants was for use, consumption, or resale within the Utah Market and surrounding geographic areas.

91.   WHI has been precluded from effectively competing in the supply of Concrete, to Construction Projects in the Utah Market on account of the Defendants' discriminatory pricing practices, including their refusal to offer WHI terms and pricing for Cement of like grade and quality comparable to those enjoyed by the Top-Tier Purchasers and instead offering only terms and pricing that are financially onerous and unsupportable by the Utah Market.

98.     The affirmative actions of the Defendants described in this Complaint were wrongfully concealed and carried out in a manner that precluded detection.

99.     Defendants engaged in a successful, illegal antitrust conspiracy that, by its nature,

92.     By engaging in the illegal and collusive discriminatory pricing practices described herein, Defendants are engaged in violations of the Utah Unfair Practices Act, Utah Code Ann. § 13-5-1 *et seq.*

93.     As a direct result of Defendants' violations of the Utah Unfair Practices Act, WHI has suffered substantial loss and damage to its trade and business, in an amount to be proven at trial, and is entitled to recover damages and costs of suit pursuant to Utah Code Ann. § 13-5-14.

## FIFTH CAUSE OF ACTION
### Fraudulent Concealment

94.     WHI realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs 1 through 93 of this Complaint.

95.     Until shortly before the filing of this action, WHI had no knowledge of any of the violations of Defendants described in this Complaint.

96.     WHI, until recently, could not have discovered, by the exercise of reasonable diligence, that Defendants had engaged in the violations alleged in this Complaint since Defendants and their co-conspirators fraudulently concealed these violation so as to obscure their illegal activity.

4.      On WHI's Fourth Cause of Action, that the complained discriminatory pricing practices engaged in by Defendants be adjudged to be in violation of the Utah Unfair Practices Act; that Defendants be held jointly and severally liable therefor; and that WHI recover damages as proved as provided by law.

5.      On WHI's Fifth Cause of Action, that the complained actions of Defendants be adjudged to constitute fraudulent concealment; that the running of any statute of limitations with respect to any claims that WHI has as a result of the illegal acts alleged in this instant action against Defendants has been tolled and suspended; that Defendants be held jointly and severally liable therefor; and that WHI recover damages as proved as provided by law.

6.      Attorney fees and costs of suit.

7.      Punitive damages.

8.      For such other and further relief as the Court determines to be just and proper.

## JURY DEMAND

WHI hereby requests the matter be tried to a jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED this  11ᵀᴴ  day of June, 2013.

STRONG & HANNI, P.C.

Brian C Johnson
H. Burt Ringwood
R. Roman Groesbeck
*Attorneys for Plaintiff*